J-A12002-21

2022 PA Super 49

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MAXWELL DAVID EDGIN :
:
Appellant : No. 984 MDA 2020

Appeal from the Judgment of Sentence Entered June 4, 2020
In the Court of Common Pleas of Centre County
Criminal Division at No:  CP-14-CR-0001599-2018

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

OPINION BY STABILE, J.:                    **FILED:  MARCH 22, 2022**

Appellant, Maxwell David Edgin, appeals from the judgment of sentence
entered in the Court of Common Pleas of Centre County on June 4, 2020.  On
appeal, Appellant challenges the trial court's denial of his motion to suppress
evidence.  For the reasons stated below, we vacate and remand.

Following a hearing on Appellant's motion to suppress evidence, the trial
court made the following findings:

1. Joshua Maurer is a patrol officer with the State College
   Department.
2. Officer Maurer has been with the State College Police
   Department for 2 years, is experienced in administering
   standard field sobriety tests, has made over a dozen driving
   under the influence (DUI) arrests during his tenure, and has
   dealt with instances of alcohol overdose amongst college
   students.
3. On May 30, 2018, Officer Maurer was dispatched to a report
   of an intoxicated driver in State College, Centre County,
   Pennsylvania.

4. Officer Maurer received information from dispatch that Nick Bradley, a bouncer at Bar Bleu, called 911 at approximately 7:47 p.m. to report a male intoxicated driver.

5. There was conflicting testimony from Officer Maurer and Officer Kenneth Shaffer regarding what was known on the night of May 30, 2018 before the incident which led to the current suppression motion versus what was learned after an investigation was made, and after [Appellant] was in custody.

6. It is clear to the [trial court] that Mr. Bradley observed a male recklessly driving a black F-150 truck northbound on Garner Street towards College Avenue, an area known for its heavy pedestrian traffic. Officer Shaffer testified that in his experience, driving recklessly is often synonymous with driving intoxicated.

7. Mr. Bradley gave the registration of the male driver, and stated he observed damage on the taillights on the rear end of the truck.

8. Raymond Raker also called 911 on May 30, 2018[,] at approximately 8:04 p.m. to report an accident near Shellers Bend. Mr. Raker did not witness the accident.

9. At approximately 7:57 p.m.[,] Julia Rater called to report observing a black F-150 run a red light at Westerly Parkway and Atherton Street, and almost striking another vehicle.

10. While on the phone with dispatch, Ms. Rater followed the truck, and observed it swerving in and out the lane and being driven erratically, in general.

11. Ms. Rater followed the vehicle to 110 Raleigh Avenue where she observed a white male exit the truck wearing a greyish white shirt and blue shorts.

12. Ms. Rater observed the male staggering and stumbling to the garage door, enter a code in a keypad, and then enter the residence through the garage door.

13. Officer Mauer was in a marked vehicle and in full uniform when he arrived at 110 Raleigh Avenue at 8:01 p.m.

14. Upon arrival at the residence, Officer Maurer observed the truck with the damage that had been described by the callers.

15. Officer Maurer also observed air actively leaking from the right rear tire.

16. Officer Maurer's colleague, Officer Stover, arrived at the residence simultaneously to Officer Maurer's arrival, and Officer Shaffer arrived shortly thereafter, at approximately 8:07 p.m.

17. Just before Officer Shaffer arrived, he contacted Ms. Rater regarding her call to 911. When Officer Shaffer arrived, he

observed the F-150 truck to have damage on the right side and the rear end. The truck also had dents, scrapes, the mirror was off, and there was a large piece of bark or wood shoved between the rim and the tire.

18. In an attempt to make contact with the male, Officer Maurer and his colleagues announced themselves and pounded on the front door and the rear sliding door multiple times with no response.

19. The officers contacted their lieutenant, Lieutenant Angelotti, who came to the residence.

20. The officers conveyed their concerns about the welfare of the male to Lieutenant Angelotti and inquired about making an entry into the house.

21. Officer Maurer was concerned the male may have had a medical emergency or was injured based on the damage to the vehicle.

22. Officer Shaffer testified Mr. Bradley, the bouncer, believed the male was intoxicated. Officer Shaffer also had concerns the male may have been diabetic, as Officer Shaffer had prior experience with diabetic emergencies.

23. Officers Maurer, Stover, and Shaffer used the rear sliding doors to make entry into the residence at 8:27 p.m. At his time, it was still daylight.

24. The [o]fficers announced themselves loudly and searched the house for the male.

25. The officers found the male asleep in a bedroom on the second floor of the residence.

26. Officer Maurer smelled a strong odor of alcohol, and had to shake the male several times to wake him up, and recognize the officers.

27. After waking the male, Officer Maurer noticed the male's speech was very slurred, his eyes were bloodshot and watery, and he stumbled getting out of bed.

28. The officers called for Emergency Medical Services (EMS) at approximately 8:29 p.m. for overconsumption of alcohol.

29. The male was identified as [Appellant] via his driver's license. Ms. Rater also returned to the residence to identify [Appellant] while he was in the back of an ambulance.

30. After awaking [Appellant] from sleep, Officer Stover put [Appellant] in a wrist lock. Officer Maurer testified that putting a *suspect* in a wrist lock is standard to protect the officer.

31. Officer Maurer assisted [Appellant] downstairs and led him outside.

32. Once outside, Officer Maurer checked for injuries and proceeded to recite to [Appellant] his ***Miranda***[1] rights.
33. [Appellant] was then interrogated at the scene.
34. [Appellant] denied driving, and denied that his truck was ever downtown.
35. EMS arrived at approximately 8:47 p.m.
36. When EMS arrived[,] [Appellant] was taken to the hospital.
37. [Appellant]'s consent to a blood draw is not at issue before [the trial court] and testimony surrounding the procurement of [Appellant]'s Blood Alcohol Content (BAC) was not presented, nor was evidence stating [Appellant]'s BAC level presented to [the trial court].

Trial Court Opinion and Order, 11/1/19, at 1-4.[2] (italics added).

Relying on the factors set forth in ***Commonwealth v. Roland***, 637 A.2d 269 (Pa. 1994), which we discuss in detail ***infra***, the trial court reasoned:

When analyzed together, the factors determining whether a warrantless intrusion was justified supports the Commonwealth's argument that exigent circumstances existed at the time law enforcement entered [Appellant]'s home. The gravity of the offense was quite high as there were multiple calls made to 911 regarding a black F-150 driving recklessly in a well-populated area. 911 caller Julia Rater remained on the phone with dispatch while describing the driver erratic driving, near-miss with another driver on the road, his running of a red light, and, finally, his staggering and stumbling demeanor as he exited his car and walked into his home. Ms. Rater's call coupled with Nick Bradley's call reporting a person recklessly driving a truck matching the same description more than adequately expressed [Appellant]'s disregard for the safety of others that evening.

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

[2] Subsequently, Appellant was charged with seven counts under Title 75, including: DUI – Section 3802(c) (Count 1); DUI – Section 3802(a) (Count 2); traffic control signals – Section 3112(a)(3)(i) (Count 3); one-way roadways – Section 3308 (Count 4); obedience to traffic control devices, Section 3111(a) (Count 5); careless driving, Section 3714(a) (Count 6); and, accidents involving damage to unattended vehicles or property, Section 3745(a) (Count 7).

There was a probability [Appellant] was suffering a medical emergency. Law enforcement arrived at [Appellant]'s residence shortly after [Appellant] entered the home. There were at least four marked police vehicles surrounding [Appellant]'s house. Shortly after arriving, the officers announced themselves loudly and pounded on the door. They received no response. Officer Maurer had extensive experience with impaired individuals. Officer Shaffer knew the dangers of over-consumption of alcohol, but also concerned with the possibility that [Appellant] may be having a diabetic emergency. Armed with their experience, Mr. Bradley's report that [Appellant] was highly intoxicated, the information gleaned from the call with Ms. Rater, and the visible damage to [Appellant]'s truck, the officers came to the conclusion that the driver of the truck was either intoxicated or suffering from a medical emergency or both. These details were enough to form basis of probable cause to enter the home. [. . .]

In consideration of factor four, not only did Ms. Rater provide a detailed account of [Appellant]'s actions as she witnessed them, but she followed him home, witnessed him exit his truck, and enter the residence law enforcement later entered. While Ms. Rater did eventually leave [Appellant]'s residence, the officers arrived approximately five minutes later. Officer Shaffer testified that when he arrived at [Appellant]'s residence the truck's engine was still hot. It was more than reasonable for law enforcement to believe [Appellant] was in the house.

Finally, the officers' entry into the house was peaceable as the sliding door they opened to enter the home was unlocked, and the entry was done during daylight hours. [The trial court] concludes there were exigent circumstances present to justify law enforcement's warrantless entry into [Appellant]'s home.

Trial Court Opinion, 11/1/19, at 6-7.

After denying Appellant's motion for suppression of evidence, Appellant proceeded to a non-jury trial on the two DUI counts. On June 4, 2020, the trial court, after finding him guilty, sentenced Appellant, *inter alia,* to pay a

fine in the amount of $1,000.00, and imposed no additional sentence on the second DUI count.[3] This appeal followed.

On appeal, Appellant raises the following issue for our review:

> Did the suppression [court] err in holding that the warrantless entry and search of [Appellant]'s residence did not violate [Appellant]'s constitutional rights, as set forth in Fourth Amendment to the U.S. Constitution and Article I, Section 8 of the Pennsylvania Constitution, by finding that said search was supported by probable cause and exigent circumstances[?]

Appellant's Brief at 4.

Our review of an order denying a motion to suppress is limited:

> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Russo*, 594 Pa. 119, 934 A.2d 1199, 1203 (2007) (citations omitted). As an appellate court, we are not bound by the suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is de novo and our scope of review is plenary. *Id*.

*Commonwealth v. Wilmer*, 194 A.3d 564, 567 (Pa. 2018).

With this background in mind, we now address the issue raised in the instant appeal.

---

[3] On the same day, Appellant was sentenced on the remaining counts, after pleading guilty to all of them.

We discern some ambiguity regarding the grounds relied upon by the officers in making the warrantless entry into Appellant's residence, which is also present in the Commonwealth's argument before the trial court and us. It appears the Commonwealth is arguing that the officers could enter Appellant's residence under exigent circumstances and/or for emergency aid purposes.[4] We consider these in turn.

> In **Wilmer**, our Supreme Court stated:
>
> Under the Fourth Amendment, "searches and seizures without a warrant are presumptively unreasonable," subject only to specifically established exceptions. **Katz v. United States**, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); **Birchfield v. North Dakota**, ––– U.S. –––, 136 S.Ct. 2160, 2173, 195 L.Ed.2d 560 (2016); **Arizona v. Hicks**, 480 U.S. 321, 327, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); **Commonwealth v. Roland**, 535 Pa. 595, 637 A.2d 269, 270 (1994). These exceptions include, *inter alia*, exigent circumstances, the "plain view" exception, searches incident to arrest, consent searches, and automobile searches. A police officer may also briefly detain a person without a warrant or probable cause, so long as the officer possesses a reasonable suspicion that the individual is or is about to be engaged in criminal activity. **United States v. Cortez**, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**Wilmer**, 194 A.3d at 567-68 (footnotes omitted).

---

[4] Likewise, the trial court found the entry to be legal on exigent circumstances grounds, even though some of the reasons provided seem more consistent with emergency aid grounds. In **Commonwealth v. Coughlin**, 199 A.3d 401, 406 n.4 (Pa. Super. 2018) (*en banc*) this Court held that the **Roland** factors are of limited utility in determining whether warrantless entry was necessary for rendering medical aid.

In **Roland**, the appellant was convicted of furnishing liquor or malt or brewed beverages to minors, possession of a small amount of marijuana, and possession of drug paraphernalia. Appellant's convictions rested on evidence obtained when police entered his home, without a warrant, to investigate underage drinking. The **Roland** Court identified seven factors to be considered in applying the exigent circumstances exception to the warrant requirement:

> Absent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth Amendment. **Payton v. New York**, 445 U.S. 573, 583–90, 100 S.Ct. 1371, 1378–82, 63 L.Ed.2d 639, 648–53 (1980). In determining whether exigent circumstances exist, a number of factors are to be considered. As stated in **Commonwealth v. Wagner**, 486 Pa. 548, 557, 406 A.2d 1026, 1031 (1979),
>
>> Among the factors to be considered are: (1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.
>
> **Accord Commonwealth v. Williams**, 483 Pa. 293, 298–99, 396 A.2d 1177, 1179–80 (1978), **cert. denied**, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980). Other factors may also be taken into account, such as whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling. **See Minnesota v. Olson**, 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85, 95 (1990). Nevertheless, "police bear a heavy burden when

attempting to demonstrate an urgent need that might justify warrantless searches or arrests." ***Welsh v. Wisconsin***, 466 U.S. 740, 749–50, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 743 (1984).

Where an offense being investigated by police is a minor one, a balancing of the foregoing factors should be weighted against finding that exigent circumstances exist. ***Welsh v. Wisconsin***, 466 U.S. at 750–53, 104 S.Ct. at 2098–99, 80 L.Ed.2d at 743–45 (1984). ***See also Commonwealth v. Williams***, 483 Pa. at 298, 396 A.2d at 1179 (where no grave offense is involved, particularly a crime of violence, the justification for proceeding without a warrant is more likely absent).

As stated in ***Welsh v. Wisconsin***, 466 U.S. at 750–53, 104 S.Ct. at 2098–99, 80 L.Ed.2d at 743–45,

> Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.
> ....
>
> [I]t is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor.
>
> ... [A]n important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense.... [A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense, such as the kind at issue in this case, has been committed.

***Roland***, 637 A.2d at 270-71. Applying these considerations the Court held entry by police into appellant's home was improper. The police were not in hot pursuit of a fleeing felon. Nor was there a danger to police or other persons that would have necessitated an immediate entry. There was no reason to

believe that appellant or the minors were armed. Further, the entry occurred at nighttime, a particularly suspect time for searches to be conducted. Thus, given the minor nature of the offense that triggered the police entry, and the lack of exigent circumstances supporting that entry, the Court held denial of appellant's motion for suppression was erroneous.

As noted above, applying **Roland** to the facts at hand, the trial court concluded that there were exigent circumstances present to justify law enforcement's warrantless entry into Appellant's home. We disagree.

First, we consider the offense gravity. Appellant committed misdemeanor DUI offenses in this case. In **Lange v. California**, 141 S. Ct. 2011, 2016 (2021), the United States Supreme Court held that a misdemeanant's successful flight into his or her home does not categorically give rise to an exigency supporting warrantless police entry. The **Lange** Court noted that "misdemeanors run the gamut of seriousness." **Id.** at 2020. In arriving at its holding, the **Lange** Court addressed **Welsh**, an older drunk driving case not involving the suspect's flight:

> This Court has held that when a minor offense alone is involved, police officers do not usually face the kind of emergency that can justify a warrantless home entry. In **Welsh v. Wisconsin**, 466 U.S. 740 (1984)], officers responded to a call about a drunk driver only to discover he had abandoned his vehicle and walked home. **See** 466 U.S., at 742–743, 104 S.Ct. 2091. So no police pursuit was necessary, hot or otherwise. The officers just went to the driver's house, entered without a warrant, and arrested him for a "nonjailable" offense. **Ibid**. The State contended that exigent circumstances supported the entry because the driver's "blood-alcohol level might have dissipated while the police obtained a warrant." **Id.**, at 754, 104 S.Ct. 2091.

We rejected that argument on the ground that the driver had been charged with only a minor offense. "[T]he gravity of the underlying offense," we reasoned, is "an important factor to be considered when determining whether any exigency exists." *Id.*, at 753, 104 S.Ct. 2091. "[W]hen only a minor offense has been committed" (again, without any flight), there is reason to question whether a compelling law enforcement need is present; so it is "particularly appropriate" to "hesitat[e] in finding exigent circumstances." *Id.*, at 750, 104 S.Ct. 2091. And we concluded: "[A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense" is involved.

*Id.* In summary, drunk driving can be considered a minor offense.[5] And where there is no hot pursuit or flight involved, warrantless entry into a home under the exigent circumstances doctrine is rarely permissible. *Id.*

In **Commonwealth v. Fickes**, 969 A.2d 1251, (Pa. Super. 2009), however, this Court wrote that DUI, while a misdemeanor, is "one of the few, if not only misdemeanors, that results in over 500 deaths per year in our Commonwealth." *Id.* at 1258. Thus, the **Fickes** Court therefore concluded the gravity of the offense before it was high. *Id.* Reading **Fickes** in light of **Lange** and **Welsh**, however, we do not believe a categorial approach is appropriate. Rather, we must examine the issue case by case. The instant case, like **Welsh**, did not involve flight from police in hot pursuit. And while we do not wish to diminish the seriousness of Appellant's reckless, drunken driving through a well-populated area—conduct that easily could have turned deadly, as the **Fickes** Court explained—we conclude for purposes of the

_____

[5] The defendant in **Welsh** had his license revoked; he did not face criminal charges. We nonetheless find **Welsh**, and the **Lange** Court's treatment of **Welsh**, instructive.

- 11 -

exigent circumstances analysis that police were not investigating a high-gravity offense in this case. Thankfully there were no reported injuries resulting from Appellant's offenses; when police arrived at Appellant's home, they were investigating reports of his erratic driving after being turned away from a bar because of his apparent intoxication. We therefore do not weigh this factor in favor of exigency.

Regarding the second **Roland** factor, there is no indication in the record that would support the officers' reasonable belief that Appellant was armed. Commonwealth's Brief at 23. "This consideration bears materially on the justification for a warrantless entry." **Williams**, 396 A.2d at 1179. This factor weighs against warrantless entry.

Third, we must consider whether the Commonwealth showed that "there exists not merely the minimum of probable cause, that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause, including 'reasonably trustworthy information,' to believe that the suspect committed the crime involved." **Williams**, 396 A.2d at 1180. In **Fickes**, police received a report of a hit and run automobile collision. **Fickes**, 969 A.2d at 1252. Following a trial of skid marks, a stop sign apparently bent over from a collision, and muddy tire tracks from a vehicle that had run off the road, police found the defendant asleep at the wheel of his vehicle in his open garage. **Id.** at 1253-54. The garage appeared to be arranged as a "makeshift social imbibing area," and the vehicle apparently collided with a couch upon entry to the garage. **Id.** at 1258. One open bottle of vodka was on the

passenger seat. *Id.* On these facts, the *Fickes* Court held that probable cause existed in support of the warrantless entry into the defendant's garage. *Id.*

Instantly, police received information that Appellant drove away from a bar after being denied entry based on his intoxication, and that he drove erratically through a crowded area and eventually staggered from his vehicle into his garage. Appellant acknowledges that police had strong reason to believe he was intoxicated; he disputes whether evidence supported warrantless entry for a medical emergency. We address the latter below. For purposes of *Roland*, we conclude police had sufficient probable cause to believe Appellant was intoxicated.

Fourth, there is no dispute Appellant was in the premises being entered.

Fifth, there is no indication that Appellant would have escaped if not swiftly apprehended. Commonwealth's Brief at 27. Several officers surrounded the premises; as such, escape was not an option to Appellant, particularly in his condition. This factor weighs against warrantless entry.

Sixth, the entry was peaceable, through an unlocked, sliding door in the back of the house at 8:27 pm. Testimony indicates that it was still daylight at that time. N.T. Suppression, 3/11/19, at 52. We observe that the Commonwealth, in its brief described the entry as occurring in the "evening". Commonwealth's Brief at 22, 23. These factors neither help nor hurt the case for exigent circumstances.

Next, we consider the Commonwealth's argument that the dissipation of Appellant's BAC justified the warrantless entry. Commonwealth's Brief at 32-33. Quoting from **Commonwealth v. Dommel**, 885 A.2d 998, 1004 (Pa. Super. 2005), the Commonwealth argues that "perhaps, [the] most important [factor] [is] the likelihood that [Blood Alcohol Content] evidence crucial to a DUI charge permitting warrantless arrest in the first place would be lost in the time it would take the officer to secure a warrant." Commonwealth's Brief at 32-33 (alterations in original). **Id.**

In considering this argument, we must take account of developments in the law after **Dommel**. In **Commonwealth v. Trahey**, 228 A.3d 520 (Pa. 2020), our Supreme Court noted:

> Both breath tests and blood tests constitute "searches" within the meaning of the Fourth Amendment. Accordingly, conducting such a search without a warrant is reasonable only if it falls within a recognized exception to the warrant requirement. One such exception . . . applies where the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. Although an exigency may present itself in a variety of contexts, its defining trait is a compelling need for official action and no time to secure a warrant. Such a need may arise, for instance, to prevent the imminent destruction of evidence.

**Id.** at 530 (internal citations and quotation marks omitted).

The Commonwealth's argument assumes that the difficulty in obtaining and executing a search warrant prior to the expiration of the two-hour window set forth in the DUI statute gives rise to an urgent need for warrantless testing. Under this reasoning, given the mechanics of the statute and the

operation of intoxication, essentially all DUI cases qualify as an exigent circumstance. However, such an argument is inconsistent with **Missouri v. McNeely**, 569 U.S. 141 (2013). In **McNeely**, "the U.S. Supreme Court rejected the government's argument that the natural dissipation of alcohol in a DUI suspect's bloodstream constitutes a "*per se* exigency" that categorically justifies warrantless BAC testing." **Trahey**, 228 A.2d at 531 (citing **McNeely**, 569 U.S. at 147).

Relatedly, "a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while police obtained a warrant." **Welsh**, 466 U.S. at 754. Similarly, in **Roland**, relying on **Welsh**, our Supreme Court held that even if the evidence of the crime might have been removed from appellant's residence before a warrant could have been obtained, "this alone would not have supported a warrantless entry to investigate [a summary offense]." **Roland**, 637 A.2d at 272.[6] Thus, while destruction of the evidence is certainly a factor to be considered, it is not, as suggested by the Commonwealth, the most important.

Considering all the foregoing, we do not believe the **Roland** factors weigh in favor of an exigency here. Police were investigating a suspected

---

[6] We are aware that **Welsh** involved a noncriminal civil forfeiture offense (a driver's license revocation), **Roland** involved a summary offense, and that at issue here is a misdemeanor. Despite the differences, for the reasons explained *infra*, we believe **Welsh** and **Roland** support our conclusion that destruction of the evidence was not a factor supporting the lawfulness of the entry in the instant matter.

drunk driver and nothing more. DUI is a misdemeanor, and there were no reported injuries, no reported property damage other than to the vehicle itself, and therefore nothing to support a finding of a high gravity offense here. There is no indication Appellant was armed, and no indication he would have could have attempted to escape. The *Roland* factors are not meant to support warrantless entry any time police have strong reason to suspect drunk driving. Moreover, the need to obtain BAC evidence is not sufficient, pursuant to *McNeely*, to create an exigency. We therefore cannot uphold the trial court's denial of his suppression motion on this basis.

We now consider whether police were justified in entering Appellant's home to render emergency medical aid.

> "[T]he ultimate touchstone of the Fourth Amendment," we have often said, "is 'reasonableness.'" [***Brigham City v. Stuart***, 547 U.S. 398, 403 (2006)]. Therefore, although "searches and seizures inside a home without a warrant are presumptively unreasonable," ***Groh v. Ramirez***, 540 U.S. 551, 559, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (internal quotation marks omitted), that presumption can be overcome. For example, "the exigencies of the situation [may] make the needs of law enforcement so compelling that the warrantless search is objectively reasonable." ***Mincey v. Arizona***, 437 U.S. 385, 393–394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).
>
> ***Brigham City*** identified one such exigency: "the need to assist persons who are seriously injured or threatened with such injury." 547 U.S., at 403, 126 S.Ct. 1943. Thus, law enforcement officers "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." ***Ibid***. This "emergency aid exception" does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises. ***Id***., at 404–405, 126 S.Ct. 1943. It requires only "an objectively reasonable basis for believing," ***id.***, at 406, 126 S.Ct. 1943, that

"a person within [the house] is in need of immediate aid," **Mincey**, *supra*, at 392, 98 S.Ct. 2408.

**Brigham City** illustrates the application of this standard. There, police officers responded to a noise complaint in the early hours of the morning. "As they approached the house, they could hear from within an altercation occurring, some kind of fight." 547 U.S., at 406, 126 S.Ct. 1943 (internal quotation marks omitted). Following the tumult to the back of the house whence it came, the officers saw juveniles drinking beer in the backyard and a fight unfolding in the kitchen. They watched through the window as a juvenile broke free from the adults restraining him and punched another adult in the face, who recoiled to the sink, spitting blood. **Ibid**. Under these circumstances, we found it "plainly reasonable" for the officers to enter the house and quell the violence, for they had "an objectively reasonable basis for believing both that the injured adult might need help and that the violence in the kitchen was just beginning." **Ibid**.

**Michigan v. Fisher**, 558 U.S. 45, 47-48 (2009).

While our courts have repeatedly recognized that the Fourth Amendment does not prevent police officers from conducting a warrantless entry and search when they reasonably believe that a person is in need of immediate aid,[7] the intrusion "must be commiserated with, and limited to, the perceived need to provide immediate assistance," **Wilmer**, 194 A.3d at 571, or, as the U.S. Supreme Court stated, "strictly circumscribed the exigencies which justify its initiation." **Id.** (quoting **Terry v. Ohio**, 392 U.S. 1, 25-26 (1968)).

Our Supreme Court clarified the meaning of the phrase "strictly circumscribed by the exigencies which justify its initiation" stating:

---

[7] **See**, **e.g.**, **Caniglia v. Strom**, 141 S.Ct. 1596 (2021).

- 17 -

> [T]he right of entry into the private dwelling by law enforcement officers terminates when either the necessary emergency assistance has been provided or it has been confirmed that no one inside needs emergency assistance. At that point, law enforcement officers must leave the residence unless some other exception to the warrant requirement permits their continued presence.

*Wilmer*, 194 A.3d at 572.

Instantly, the record reflects that Appellant was able to drive himself home and enter his home by using the keypad on his garage door. This is far removed from the emergencies that have been held to justify warrantless intrusions; *Coughlin*, 199 A.3d at 408-11 (credible report of shots fired from an assault rifle in a residential neighborhood noted for gun violence); *Commonwealth v. Ford*, 175 A.3d 985, 990 (Pa. Super. 2017) (reports of someone screaming and someone with a gun); *appeal denied*, 190 A.3d 580 (Pa. 2018). Thus, there is no evidence of anything more than intoxication, and there is no support in the law for holding that intoxication by itself creates a medical emergency. The Commonwealth's arguments and the trial court's findings to the contrary—that a high degree of intoxication can itself create a medical emergency or that Appellant may have been suffering a diabetic emergency—find no support in the record. There is no evidence specific to Appellant indicating that a medical emergency existed here. We therefore conclude that the emergency aid exception to the warrant requirement did not support entry into Appellant's house in this case.

Furthermore, even if we assume that the officers had an objectively reasonable basis for believing that Appellant needed immediate assistance,

once they ascertained his conditions and acted upon it (by calling the EMS), their authority for a warrantless entry into the residence ceased. At that point, the officers were required to leave the premises. **See Wilmer**, 194 A.3d at 573. Instead, after removing Appellant from his residence, the officers proceeded to detain, mirandize, and interrogate Appellant. In doing so, however, they exceeded their authority. **Id.**

Based on the foregoing, we conclude that the trial court erred in denying Appellant's motion to suppress all evidence of wrongdoing procured by the unlawful entry into his home. We therefore vacate the judgment of sentence and remand for further proceedings consistent with this opinion.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Musmanno did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2022