J-S04022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYMIR ROBINSON | : | |
| | : | |
| Appellant | : | No. 1036 EDA 2023 |

Appeal from the Judgment of Sentence Entered April 5, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No:  CP-23-CR-0001571-2022

BEFORE:  BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED MAY 31, 2024**

Appellant, Dymir Robinson, appeals from his sentence of four to eight years' imprisonment for persons not to possess firearms, 18 Pa.C.S.A. § 6105. Appellant contends that the trial court erred by denying a motion to suppress evidence obtained from Appellant's telephone calls with an inmate in Delaware state prison.  Appellant argues that the calls he made to the inmate were recorded without his consent, in violation of Pennsylvania's Wiretap Act, 18 Pa.C.S. §§ 5701-5782.  We hold that the trial court properly denied the motion to suppress, and we affirm.

On February 10, 2022, Darby Police Detective Anthony Salvatore filed an application for a warrant to search Appellant's home for firearms.  The detective alleged that he observed Appellant participate in two video phone calls with an inmate in Delaware state prison.  The video phone calls were recorded on February 7, 2022 and February 8, 2022, and the detective viewed

the videos on February 9, 2022. During each call, Appellant displayed two semi-automatic handguns to the inmate. In the second call, Appellant mentioned that his probation officer was about to arrive in five minutes.

The detective further alleged that on February 9, 2022, he learned through a record check that Appellant had a conviction in Delaware for possession of controlled substances with intent to deliver, a conviction that prohibited him from possessing firearms in Pennsylvania. On the same day, the detective contacted a Pennsylvania state parole agent, who told him that Appellant was on active state parole in Pennsylvania.

Based on this information, the detective obtained the search warrant and recovered the firearms from Appellant's residence. Appellant was arrested and charged with violating Section 6105.

Appellant filed a motion to suppress the evidence seized from his residence, claiming that neither Appellant nor the Delaware inmate consented to the recording of their video calls. On February 1, 2023, the court held a suppression hearing. The parties stipulated to the admission of the calls, including both the audio and video components of the recordings. The parties further stipulated that (1) Appellant used a phone with the number, xxx-xxx-8541,[1] to place the video calls, and (2) the state of Delaware and the Commonwealth of Pennsylvania require both participants in a communication to consent in advance to monitoring or recording of the call.

_____

[1] Numbers have been redacted by the Court.

The Commonwealth presented testimony from two witnesses, State Parole Agent Brandon Williams and David Gist, Northeast Regional Supervisor of Intelligence for ViaPath Technologies. N.T., 2/1/2023, at 5-8. Agent Williams testified that he supervises parolees who are released from prison. Appellant was assigned to Agent Williams for supervision after Appellant was paroled on a Pennsylvania robbery sentence. When shown the video calls, Agent Williams positively identified Appellant on screen. In the February 7, 2023 video, Agent Williams identified Appellant as the man in the video seen holding a loaded magazine, a handgun, and a second loaded magazine throughout the video.

Appellant was not permitted to possess these items as a result of his conviction; possession of them also violated the terms of his parole. In the February 8, 2023 video, Agent Williams identified Appellant as the man in the video holding a box containing two firearms, which again Appellant was not permitted to possess. In the audio portion of the recording, Appellant was heard discussing the objects with the inmate.

As a result of the videos, the Delaware Corrections Office contacted law enforcement in Pennsylvania, who obtained and executed a search warrant at Appellant's residence. While executing the search warrant, law enforcement located the firearms and the magazines seen on the videos as well as marijuana. N.T., 2/1/2023, at 11-19.

Gist testified that he is the Northeast Regional Supervisor of Intelligence for ViaPath Technologies. ViaPath communication systems are present in both

Pennsylvania and Delaware prisons. To register for the ViaPath system, an inmate must set up an account through ViaPath. On the inmate's side, the account must be verified, and the inmate must acknowledge that video calls using the technology are recorded and monitored. The inmate, however, cannot dial out using the application.

A non-incarcerated individual such as Appellant can contact an inmate by downloading an application called "Getting Out Now" onto a smart device. When downloading the application, the downloader must acknowledge and agree to the user agreement, which informs the downloader that video calls are monitored and recorded. Additionally, every time a non-incarcerated person initiates a video call to an inmate, he is prompted to acknowledge that the application is property of GTL/ViaPath, and that the calls are subject to recording and monitoring. N.T., 2/1/2023, at 24-30.

Following the suppression hearing, the trial court issued findings of fact and conclusions of law pursuant to Pa.R.Crim.P. 582(I). The court found both Commonwealth witnesses credible and made the following additional findings:

1. At the suppression hearing both parties stipulated to the Commonwealth's exhibit C-1 depicting two video phone calls made between the above Appellant and an individual, Mark Johnson, incarcerated in the state of Delaware. [N.T. 2/1/2023 pp. 7-8].

2. At the hearing the parties also stipulated that the above Appellant used a phone with the number 267-969-8541. [N.T. 2/1/2023 p. 7].

3. Additionally, at the hearing both parties stipulated that both the states of Delaware and Pennsylvania were states that required

both parties to a phone communication to consent to the call being monitored and/or recorded. [N.T. 2/1/2023 pp. 5-6].

4. The only way an inmate in Delaware can have video visits is by getting an account through ViaPath, which the inmate acknowledges that the "calls" are recorded or monitored. [N.T. 2/1/2023 p. 26].

5. An inmate cannot dial out. [N.T. 2/1/2023 p. 27].

6. The person on the outside has to dial in; however, in order for the person on the outside to be able to "dial in" he must download an application (app) on an electronic device which said app is used; and the outside user has agreed to the user agreements that the "calls" are recorded and monitored. [N.T. 2/1/2023 p. 27].

7. Every time someone on the outside wants to initiate a "call" with an inmate that outside person has to hit the acknowledgement screen which advises the user that the "call" could be recorded or monitored. [N.T. 2/1/2023 p. 30].

Based upon these findings, the trial court concluded that Appellant's use of the app demonstrated his consent to the recording and monitoring of the video calls. Findings of Fact and Conclusion of Law, 2/27/2023, at 2-3. The court denied Appellant's motion to suppress.

On April 6, 2023, Appellant proceeded to a non-jury trial where he was convicted of persons not to possess a firearm. The court imposed sentence, and this timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant raises two issues in this appeal:

1. Did the lower Court err by not granting [Appellant's] motion to suppress inmate video calls?

2. Did the lower court err by not granting the suppression of a search warrant obtained based on illegally recorded inmate video calls as fruits of the poisonous tree?

Appellant's Brief at 5. We review both issues together because they involve the same subject.

> Our review of an order denying a motion to suppress is limited:
>
> We may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error . . . As an appellate court, we are not bound by the suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Edgin*, 273 A.3d 573, 579 (Pa. Super. 2022). Additionally, "it is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some, or none of the evidence presented at the suppression hearing." *Commonwealth v. Shaw*, 246 A.3d 879, 883 (Pa. Super. 2021). "We cannot and will not reweigh the evidence or substitute our credibility determinations for those of the suppression court." *Commonwealth v. Carmenates*, 266 A.3d 1117, 1127 (Pa. Super. 2021).

Agent Williams' testimony establishes that Appellant displayed firearms to a Delaware inmate during two video calls. Appellant does not dispute that the phone number used in the calls belongs to him or that he is depicted on both video calls. The only issue that Appellant raises is that the evidence did not show that both parties to the calls consented to their interception, thus

requiring suppression of all evidence obtained as a result of that unlawful intrusion.

Pennsylvania's Wiretap Act provides that in general, it is illegal for a party to intentionally intercept any wire, electronic or oral communication. 18 Pa.C.S.A. § 5703(1). There are, however, exceptions to this rule under the Wiretap Act. One of these exceptions, Section 5704(4), is pertinent here: "It shall not be unlawful and no prior court approval shall be required under this chapter for . . . a person, to intercept a wire, electronic or oral communication, where *all parties to the communication have given prior consent to such interception*." 18 Pa.C.S.A. 5704(4) (emphasis added).

"Prior consent" exists when the person being recorded "knew or should have known, that the conversation was being recorded." ***Commonwealth v. Diego***, 119 A.3d 370, 381 (Pa. Super. 2015). To determine whether a person "should have known" that the conversation was being recorded, we apply the objective standard of a "reasonably intelligent person" who "consents by conduct." ***Commonwealth v. Byrd***, 235 A.3d 311, 320 (Pa. 2020) (holding, when inmate was recorded making threats to complainant during phone call, "our focus is not on [the inmate's] subjective knowledge. Rather, the standard is the objective knowledge of a reasonably intelligent person following the warning that the call may be monitored or recorded").

The testimony of ViaPath's employee, Gist, which the trial court found credible, establishes that both parties to the video calls, Appellant and the

Delaware inmate consented to interception of the calls. ViaPath owns the "Getting Out Now" application. Gist testified that the Delaware inmate had to set up an account through ViaPath, and in the course of doing so, he had to acknowledge that video calls using ViaPath technology are recorded and monitored. Thus, Gist demonstrated that the inmate knew or should have known that his video calls were subject to interception.

With regard to Appellant, Gist emphasized that the Delaware inmate could not dial out using the application. Instead, the non-incarcerated user, Appellant, had to contact the inmate, and the only way to contact the inmate was by downloading the application. To complete downloading successfully, the non-incarcerated user had to agree to the terms of the application, including the term that video calls are subject to monitoring and recording. Additionally, each time the non-incarcerated user placed a call, he had to agree to the terms of monitoring and recording. Through this testimony, Gist showed that Appellant consented to interception of the calls.

Because Gist's testimony establishes that both Appellant and the inmate knew or should have known that both calls were monitored and recorded, the Commonwealth satisfied the exception under Section 5704(4) of the Wiretap Act permitting interception of wire, electronic or oral communications.

Appellant suggests that this evidence is insufficient because the Commonwealth failed to submit a written agreement between Appellant and ViaPath in which Appellant accepted monitoring or recording of video calls.

However, Section 5704(4) does not require a party's consent to be in writing. Nor does Appellant provide any caselaw requiring written consent, and we are not aware of any. All that Section 5704(4) requires is evidence that Appellant and the inmate "knew or should have known that the conversation was being recorded." *Diego*, 119 A.3d at 381. Gist's testimony concerning the steps that had to take place for Appellant and the inmate to participate in the video calls was sufficient evidence from which the suppression court could conclude that they knew or should have known that both calls were recorded.

For these reasons, the trial court properly denied Appellant's motion to suppress. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/31/2024