J-S14029-24

2024 PA Super 130

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
        Appellant :
:
:
:
        v. :
:
:
DAVID A. MCMASTER, JR. : No. 1354 MDA 2023

Appeal from the Order Entered August 17, 2023
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-CR-0000266-2023

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

OPINION BY PANELLA, P.J.E.: **FILED JUNE 25, 2024**

The Commonwealth of Pennsylvania appeals from the Adams County Court of Common Pleas' order granting in part David A. McMaster, Jr.'s motion to suppress evidence. After careful review, we reverse and remand for further proceedings.

In its opinion, the suppression court summarized its findings of fact leading to the court's decision to grant, in part, suppression, as follows:

1. Officer Corey Ammerman (hereinafter "Officer Ammerman") is employed by the Conewago Township Police Department. Officer Ammerman has been a law enforcement officer for approximately fourteen years.

2. Officer Ammerman has been involved in hundreds of encounters dealing with individuals suspected to be under the influence of controlled substances.

3. Detective Burnell Bevenour (hereinafter "Detective Bevenour") is employed as a Detective with the Conewago Township Police

Department and has been a police officer for approximately seventeen years.

4. Detective Bevenour has been involved in hundreds of encounters dealing with individuals suspected to be under the influence of controlled substances.

5. On December 7, 2022, at approximately 3:00 p.m., Officer Ammerman was dispatched to the residence located at 2982 Hanover Pike, Conewago Township, Adams County, Pennsylvania for the report of an unclothed male subject screaming in the back yard of a neighbor. While traveling to the residence, Officer Ammerman was advised the male subject had moved to the front of the residence and was in the roadway on Hanover Pike.

6. When Officer Ammerman arrived at the residence, he observed [McMaster] walking along Hanover Pike in front of his residence, completely naked.

7. Officer Ammerman approached [McMaster] and observed [McMaster] was naked, incoherent, excited, jumping around and appeared to be under the influence of controlled substances.

8. Based on Officer Ammerman's observation of [McMaster], and for [McMaster]'s safety, Officer Ammerman secured [McMaster] with handcuffs. Officer Ammerman advised [McMaster] that an ambulance was called.

9. For proper medical treatment, Officer Ammerman questioned [McMaster] as to what controlled substances he had taken.

10. [McMaster] appeared incoherent, but eventually advised Officer Ammerman that he had consumed Ketamine and had huffed butane gas.

11. Officer Ammerman asked [McMaster] if anyone else was in the residence and [McMaster] did not respond. Officer Ammerman asked [McMaster] several times if he lived alone, and [McMaster] subsequently responded, "I live by myself".

12. Officer Ammerman did not observe any injuries on [McMaster].

13. Detective Bevenour arrived at the residence approximately three minutes after Officer Ammerman.

14. In the rear of the residence, Detective Bevenour observed that a doorway to an exterior porch and a doorway into the residence through the porch were both open. From outside the porch, Detective Bevenour observed that the inside of the house appeared to be in disarray, and there were items thrown on the floor and trash everywhere.

15. Detective Bevenour observed a butane lighter on the ground outside of the rear porch.

16. Based on Detective Bevenour's observations of [McMaster], [McMaster]'s statements that he had ingested Ketamine and inhaled butane, [McMaster]'s lack of response to the question whether anyone else was present in the residence, and Detective Bevenour's observation that the kitchen was in disarray, Detective Bevenour conducted a protective sweep of the residence. Detective Bevenour was concerned there could be person(s) in the residence suffering from a potential overdose or medical emergency.

17. Before entering the residence, Detective Bevenour announced his presence as a police officer.

18. During the protective sweep of the residence, Detective Bevenour observed, in plain view, suspected controlled substances, drug paraphernalia and a mushroom growing operation.

19. The sweep lasted less than five minutes and no individuals were present in the residence.

20. Following the sweep, Conewago Township Police secured [McMaster]'s residence, obtained a search warrant for the residence, and seized numerous items of suspected controlled substances and drug paraphernalia.

21. After receiving medical attention, [McMaster] was subsequently charged with manufacture or possession with intent to manufacture a controlled substance, possession of a controlled substance, possession of drug paraphernalia, disorderly conduct

as a misdemeanor of the third degree and indecent exposure as a misdemeanor of the first degree.

22. Officer Ammerman was wearing a body camera during the incident. The video footage and audio recording were marked as Commonwealth Exhibit 1 and entered into evidence during the suppression hearing on July 20, 2023. This [c]ourt reviewed the body camera footage, including the audio.

23. This [c]ourt finds the testimony of Officer Ammerman and Detective Bevenour credible.

Suppression Court Opinion, 8/17/23, at 1-4.

The Commonwealth charged McMaster with public drunkenness, indecent exposure, disorderly conduct, and various drug possession offenses including possession with intent to deliver.

McMaster filed an omnibus pre-trial motion for suppression of evidence, namely his statements made to police, and any physical evidence obtained from the searches of his residence.

On July 20, 2023, the court held a suppression hearing during which the Commonwealth presented the testimony of Officer Ammerman and Detective Bevenour. McMaster did not present any testimony. After taking the matter under advisement, the suppression court entered an order granting the motion to suppress in part and denying the motion in part. Specifically, the court denied suppression of McMaster's statements made to police. However, the court granted suppression of evidence seized based on the initial warrantless entry into McMaster's residence. This timely appeal followed.

On appeal, the Commonwealth argues the suppression court erred "when it granted in part the portion of [McMaster]'s omnibus motion requesting suppression of evidence discovered in a warrantless search of [McMaster]'s residence." Appellant's Brief, at 4.

When this Court reviews a Commonwealth appeal from an order granting suppression, as we are tasked to do here, we may only consider the evidence produced at the suppression hearing by the defendant's witnesses, along with the Commonwealth's evidence that remains uncontradicted. *Commonwealth v. Barr*, 266 A.3d 25, 39 (Pa. 2021). We must determine, in the first instance, whether the suppression court's factual findings are supported by the record and if they are, we are bound by those findings. *See id.* We must also keep in mind that the suppression court, as fact-finder, has the exclusive role of passing on the credibility of witnesses. *See Commonwealth v. Fudge*, 213 A.3d 321, 326 (Pa. Super. 2019). Therefore, "we will not disturb a suppression court's credibility determinations absent a clear and manifest error." *Id.* at 326 (citation omitted).

Here, the record supports the suppression court's factual findings as set forth at the suppression hearing. However, unlike the deference we give to the suppression court's factual and credibility findings, we have *de novo* review over the suppression court's legal conclusions. *See Commonwealth v. Brown*, 996 A.2d 473, 476 (Pa. 2010). Accordingly, we must determine

whether the legal conclusions the suppression court drew from its factual findings are correct. **See Barr,** 266 A.3d at 39.

The court explained that it granted suppression of the physical evidence seized during a search of McMaster's residence because it found the initial warrantless search was not justified as a protective sweep. **See** Suppression Court Opinion, 8/17/23, at 12-13.

In a brief memorandum filed with the court in response to McMaster's suppression motion, the Commonwealth asserted the police entry into McMaster's residence was permitted under the protective sweep doctrine. In support of this argument, the Commonwealth cited to **Commonwealth v. Davido**, 106 A.3d 611 (Pa. 2014) and **Commonwealth v. Caple**, 121 A.3d 511, 514 (Pa. Super. 2015).

In **Davido**, the police responded to an anonymous 911 call to "investigate a 'domestic situation' that involved a 'man …. hitting a woman[,]' and were informed en route that loud screaming had been heard from inside the residence." **Davido**, 106 A.3d at 616 (record citation omitted). When they arrived minutes later, the residence was quiet, and no one answered the door. Accordingly, "[r]esponding to a 'gut feeling' that someone inside might be injured or otherwise in need of assistance, one officer entered the residence through an unsecured window, unlocked a deadbolt on the front door, and admitted the other officer." **Id**. at 616-17 (record citation omitted). The

officers announced themselves as they proceeded to search the residence for any injured persons. *See id*. at 617.

In reviewing Davido's appeal, the Pennsylvania Supreme Court emphasized that "the potential for imminent physical harm in the domestic context implicates exigencies that may justify a limited police intrusion into a dwelling." *Id*. at 623 (citation omitted). While it refused to hold that domestic abuse cases create a *per se* exigent need for warrantless entry, the Court stated:

> We do recognize, however, that the police have a duty to respond seriously to reported domestic conflict situations, and in doing so, they must be accorded some latitude in making on-the-spot judgments as to what actions to take and what actions are reasonably necessary to protect themselves and potential victims of abuse.
>
> …
>
> … Here, the 911 call reporting domestic violence contained the fairly specific details that a man was beating a woman within a specifically identified residence, and a separate report indicated that screaming could be heard emanating from within that residence. Yet, when the officers arrived at the scene shortly before 8:00 a.m. on that Sunday morning, approximately three minutes after the 911 call had been received, no one answered the door, and no sound could be heard except the unanswered ringing of a telephone within the residence.

*Id*. at 623-24. The **Davido** Court noted the officer's initial search was limited to a search for persons in need of assistance; a subsequent search for evidence was conducted only after a warrant was secured. *See id*. at 625. Upon these facts, the Supreme Court concluded "the officers' entry into the

home was justified under the recognized 'persons in immediate need of assistance' exigency exception to the warrant requirement[.]" **Id**.

In **Caple**, officers were dispatched to a motel for a report of a domestic assault. The victim called 911 and sounded "extremely hysterical." **Caple**, 121 A.3d at 518 (record citation omitted). The victim stated she had been assaulted, that the assault had occurred in room 115, and that she had been in rooms 115 and 215. **See id**. Upon arrival at the motel, the officers spoke with two women who were occupying room 115 and learned that an assault had just occurred. The women directed the officers to room 210. In the meantime, the officers received another radio transmission that the victim could possibly be in room 215. The officers knocked loudly on the door of room 215 and announced "police", attempting to locate the victim, to no avail. The officers asked the manager to open the door. A female was located within the room who was not the assault victim. The officers observed two metal crack pipes on top of a dresser in room 215. Room 215 was secured, and a search warrant was obtained for the room. The assault victim was identified, and it was determined that the domestic assault occurred in room 115 of the motel. When police encountered the victim, they observed her face was swollen, she had a cut on her lip, and she was visibly upset. Based on the totality of the circumstances, the Court concluded the police were justified in their warrantless entry of Room 215. **See id**. at 519. The exigent circumstances of the information the officers had received, and the fact that they had not

located the victim, "allowed the officers to take 'immediate action' and enter Room 215 without a warrant to prevent further harm." ***Id***.

The suppression court found the Commonwealth's reliance on ***Davido*** and ***Caple*** under the current facts was "misplaced and not supported by the facts." Suppression Court Opinion, 8/17/23, at 11. We disagree.

While the facts may not be as specific as the reports of domestic violence in ***Davido*** and ***Caple***, we nevertheless conclude the suppression court erred when it found Detective Bevenour's minimally invasive protective sweep to confirm that no one was injured or overdosing, was improper.

Here, the circumstances presented to Detective Bevenour — McMaster's erratic behavior, McMaster's statements that he had ingested Ketamine and inhaled butane, McMaster's lack of response to the question whether anyone else was present in the residence, and Detective Bevenour's observation that the kitchen was in disarray — along with Detective Bevenour's experience with overdose and medical emergency situations, provided him with an objectively reasonable belief that someone inside the residence may be in need of immediate aid.

Indeed, the suppression court itself found that Detective Bevenour's motive for conducting the protective sweep – to ensure there was no one in the residence who needed medical attention or was suffering from a potential overdose – was sincere. ***See*** Suppression Court Opinion, 8/17/23, at 12-13 ("This [c]ourt finds that Detective Bevenour's motive for conducting the

protective sweep of [McMaster]'s residence was sincere to ensure there was no one in the residence who needed medical attention or was suffering from a potential overdose."). Notwithstanding this finding, the court concluded a protective sweep was not warranted because there was no reasonable evidence of a domestic abuse situation. *See id*. at 13.

However, the exception in question does not require the existence of a domestic situation. The legal standard to be applied where police will be excused from the warrant requirement has been set forth as follows:

> Generally, the police will be excused from compliance with the warrant and probable cause requirements of the Fourth Amendment to the United States Constitution in only limited circumstances. One of these circumstances is when the police reasonably believe that someone within a residence is in need of immediate aid. Additionally, it is widely recognized that situations involving the potential for imminent physical harm in the domestic context implicate exigencies that may justify limited police intrusion into a dwelling in order to remove an item of potential danger. The relevant inquiry is whether there was an objectively reasonable basis for believing that medical assistance was needed, or persons were in danger. [T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly involving.

*Commonwealth v. Potts*, 73 A.3d 1275, 1280-81 (Pa. Super. 2013) (citations and internal quotation marks omitted).

While this exigency often occurs in domestic situations, such as the case in *Davido* and *Caple*, the reasoning regarding exigencies in general is nevertheless sound in other contexts as well. *See Commonwealth v. Hand*, 2579 EDA 2016 (Pa. Super. Filed July 25, 2017) (unpublished memorandum)

(concluding investigating officer's minimally intrusive act of moving aside drapes to confirm no one was in immediate need of aid after a potential armed home invasion did not violate constitutional rights); ***Commonwealth v. Wilmer***, 296 MDA 2016 (Pa. Super. Filed December 5, 2016) (unpublished memorandum) (finding initial warrantless entry into sorority house justified due to emergency circumstances involving an inebriated person on the roof).

Here, the police discovered McMaster behaving in a bizarre and erratic manner, and concluded he was clearly under the influence of controlled substances. After asking a few times if he lived alone, McMaster claimed to live alone. However, McMaster did not respond when the officers asked if there were anyone else in the residence. After arriving at the scene, Detective Bevenour walked around the property to check if anybody else might be there and might need medical attention. ***See*** N.T, 7/20/23, at 22. Detective Bevenour observed that at the rear of the house, an exterior screen door and interior door to the house were both open. From the porch, Detective Bevenour observed that the inside of the house was in disarray. Based on his experience with overdose and medical emergency situations, Detective Bevenour was concerned there may have been somebody else in inside the house. ***See id***. at 24. Detective Bevenour decided to make a protective sweep of the residence to ensure nobody else needed medical attention or help. ***See id***. Detective Bevenour announced himself as the police and requested that anybody show themselves during the search. The search covered three floors

and took less than five minutes. The search was only of general areas where people might be laying and did not include opening any drawers.

Detective Bevenour credibly testified that he was concerned there could be a person in the residence suffering from a potential overdose or medical emergency. Detective Bevenour's concern was based on his observations of McMaster, McMaster's statements that he had ingested Ketamine and inhaled butane, McMaster's lack of response to the question whether anyone else was present in the residence, and Detective Bevenour's observation that the kitchen was in disarray.

Based on the totality of the circumstances, we agree with the Commonwealth's contention that the officer's actions were proper.

Accordingly, we conclude the suppression court erred when it determined the detective's minimally intrusive protective sweep violated McMaster's constitutional rights. Accordingly, we reverse that part of the suppression order which granted suppression of physical evidence, and remand for further proceedings. All other parts of the suppression order to remain the same.

Order reversed in part. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 06/25/2024