J-S42007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSHUA PAUL FISHER | : | |
| | : | |
| Appellant | : | No. 568 MDA 2024 |

Appeal from the Judgment of Sentence Entered April 4, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0001527-2022

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: FEBRUARY 14, 2025**

Joshua Paul Fisher appeals from the judgment of sentence, imposed in the Court of Common Pleas of York County, after he was convicted by a jury of two counts of possession with intent to deliver (PWID).[1]  On appeal, Fisher challenges the denial of his suppression motion.  After our review, we reverse, vacate, and remand.

On December 22, 2021, Officer Steven Pickel, a patrol officer with the York City Police Department, was dispatched at 11:39 P.M., along with Officer Giovanni McBride, to 719 South Perishing Avenue in the City of York, with a secondary location of apartment C.  ***See*** N.T. Suppression Hearing, 11/18/22,

_____

[1] 35 P.S. § 780-113 (a)(30).

at 5-6, 23. Officer Pickel was told the caller, Jessica Lynne, provided the address and then hung up. *Id.*

Officers Pickel and McBride arrived at the South Perishing Avenue residence three hours after the 911 call. *Id.* The storm door to the residence was closed, but the interior door was open so the officers could see light coming from inside the home. *Id.* The officers entered a vestibule area, announcing themselves, to look for apartment C. *Id.* at 7-8. On the other side of the vestibule the officers observed a living room, at which point it was apparent to the officers that they were in a single-family residence, not an apartment building. *Id.* at 8. In the living room, the officers observed empty or half-empty beer bottles and a cell phone with a broken screen. *Id.* at 12-13. It appeared to the officers like there had been some kind of incident or scuffle in the room, such as a fight or a domestic dispute. *Id.* at 13. The officers continued to search the house for someone in need of police assistance. *Id.* at 13.

The officers proceeded to the second floor, where they entered a bedroom and found clear plastic bins and mason jars containing soil and mushrooms. *Id.* at 14, 18. Acknowledging that it is not inherently illegal to grow mushrooms, the officers searched the internet to determine what illegal psilocybin "magic" mushrooms looked like in order to compare them to the mushrooms in the residence, and the officers decided they looked the same.

*Id.* at 32. Officer Pickel then secured a search warrant for the home. *Id.* at 21-22.

Fisher, the home's owner, was charged with two counts of PWID and one count of criminal conspiracy to commit PWID. On July 25, 2022, Fisher filed a motion to suppress evidence on the basis that no exigent circumstances existed and that the officers had no probable cause to enter the home. Therefore, Fisher asserted, all evidence found in plain view during the initial search, and the evidence later seized pursuant to the warrant obtained as a result of the illegal entry of the premises, should be suppressed. *See* Motion to Suppress, 7/25/22, at ¶¶ 25, 33.

Following a hearing held on November 18, 2022, the court denied Fisher's suppression motion, concluding that, under the circumstances, it was reasonable for the officers to believe that the 911 caller needed immediate aid. *See* Trial Court Opinion, 6/4/24, at 4. As a result, the court concluded that exigent circumstances existed which allowed the officers to conduct a warrantless search of the residence. *Id.* On January 24, 2024, a jury convicted Fisher of two counts of PWID. Fisher was acquitted of the conspiracy charge. On April 4, 2024, the trial court sentenced Fisher to two years of probation, with the first six months on house arrest.

Fisher filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Fisher raises the following claim for our review:

Did the suppression court err in finding that the York City Police had exigent circumstances to enter [Fisher's] home after a 911 call was made providing an unknown issue with no supporting information, being advised that there was an apartment there that did not exist, they arrived [three] hours later, only saw a knocked over beer bottle and damaged cell phone on the coffee table, no signs or [sic] struggle or any response to knocking on the interior door, all leading to their entry and discovery of growing mushrooms and other packaged mushrooms in the home?

Brief of Appellant, at 6.

The following principles govern our standard of review of an order denying a motion to suppress:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation, brackets, and ellipses omitted).

Fisher argues that the court erred in denying his suppression motion because the officers illegally entered Fisher's home "without a warrant and no exigent circumstances existed as an exception to the warrant requirement."

Brief of Appellant, at 13. Fisher asserts that there were no exigent circumstances to permit the officers to enter his home without a warrant because:

> 1) the 911 call[,] relayed to the police[,] had no information as to the gravity of the offense[;] 2) there was no mention of a suspect let alone if they were armed[;] 3) there was no probable cause based on no information as to the 911 call except a woman gave her name and nothing more[;] 4) there was no information provided as to a suspect being in or about the premises[;] 5) there is no information about the suspect possibl[y] fleeing as no information as to a suspect was provided and the police knew that the call they were responding [to] was over 3 hours old[;] 6) the entry was peaceable[;] and 7) the entry was at night.

*Id.* at 18. Fisher argues that weighing these factors indicates there were no exigency concerns and that the officers were only there to respond to a call that should have been cleared and moved on from. *Id.*

Fisher further asserts that there were no exigent circumstances because the officers did not have enough information to reasonably believe that someone within the residence was in need of immediate aid. *Id.* at 16, 19-20. As such, Fisher asserts the officers illegally entered Fisher's home without a warrant in violation of Fisher's constitutional right to be free from unreasonable searches and seizures and the evidence obtained as a result of the entry should have been suppressed. *Id.* at 13.

The Fourth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment of the United States Constitution, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

US. Const. amend. IV. Additionally, the Pennsylvania State Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1, § 8. However, there are limited exceptions in which the police are excused from the warrant requirements. One exception is when "the police reasonably believe that someone within a residence is in need of immediate aid." *Commonwealth v. Potts*, 73 A.3d 1275, 1280 (Pa. Super. 2013), quoting *Commonwealth v. Galvin*, 985 A.2d 783, 795 (Pa. 2009). The relevant question then becomes "whether there was 'an objectively reasonable basis for believing' that medical assistance was needed, or persons were in danger[.]" *Michigan v. Fisher*, 558 U.S. 45, 49 (2009). "Whether the actions of the police are objectively reasonable is to be judged by the circumstances known to them." *Commonwealth v. Davido*, 106 A.3d 611, 624 (Pa. 2014). Further, the intrusion "must be commensurate with, and limited to, the perceived need to provide immediate assistance."

- 6 -

*Commonwealth v. Wilmer*, 194 A.3d 564, 571 (Pa. 2018).  Our Supreme

Court stated that:

> [T]he right of entry into the private dwelling by law enforcement officers terminates when either the necessary emergency assistance has been provided or it has been confirmed that no one inside needs emergency assistance.  At that point, law enforcement officers must leave the residence unless some other exception to the warrant requirement permits their continued presence.

*Id.* at 572.

In *Davido*, *supra*, our Supreme Court recognized that domestic

violence situations present the potential for imminent harm, which implicates

exigencies that may justify police entering a home without a warrant.  *Id.* at

623.   In *Davido*, police were immediately dispatched to an address in

response to a 911 call of a domestic violence incident where screaming could

be heard coming from inside the house.  *Id.* at 616.  When the police arrived,

it was quiet, and when they knocked on the front and back door, no one

answered.  *Id.*  The officers then opened an unsecured window from the

outside and announced themselves but still received no answer.  *Id.*

Concerned that someone inside might be injured or otherwise in need of

assistance, the officers entered the home and found the victim severely

injured and incapacitated.  *Id.* at 617.   The Court explained that the

warrantless search was proper because:

> entry and search in the context of a rescue is limited to proper police attempts to find a person in need of assistance, based on a reasonable belief that such a person will be inside the area searched.  A reasonable belief must be based on the totality of the

circumstances, which may include the exigencies inherent when a report of domestic violence is being promptly investigated.

*Id.* at 625. Our Supreme Court concluded that "the officers' entry into the home was justified under the recognized 'persons in immediate need of assistance' exigency exception to the warrant requirement." *Id.*

Subsequently, in *Commonwealth v. McMaster*, 320 A.3d 85 (Pa. Super. 2024), we concluded that, while exigent circumstances are often present in domestic violence situations, "the reasoning regarding exigencies in general is nevertheless sound in other contexts as well." *Id.* at 91. In *McMaster*, the police responded to a call of an unclothed man screaming in a neighbor's back yard; the man then moved to the front of the residence and into the street. *Id.* at 87. When the officer arrived, he saw McMaster in the street in front of his residence completely naked and clearly under the influence of controlled substances. *Id.* The officer asked McMaster if anyone was inside, and he did not respond. *Id.* The officer then asked McMaster if he lived alone, and he responded that he did live alone. *Id.* Another officer, at the rear of the residence, observed from the outside that the kitchen was in disarray and items and trash were thrown on the ground. *Id.* Concerned that another person might be in the house in need of assistance because of the disarray and McMaster's lack of a response to whether anyone else was inside, the officer conducted a protective sweep of the residence. *Id.* The officer announced himself and the sweep lasted less than five minutes, during which he saw drugs, drug paraphernalia, and a mushroom-growing operation. *Id.* Following the sweep, a search warrant was obtained for McMaster's

residence. *Id.* On appeal from the denial of McMaster's suppression motion, we concluded that the circumstances presented to the officer, along with his experience with "overdose and medical emergency situations, provided him with an objectively reasonable belief that someone inside the residence may be in need of immediate aid." *Id.* at 90.

Conversely, in *Commonwealth v. Edgin*, 273 A.3d 573 (Pa. Super. 2022), we concluded that the officers did not have an objectively reasonable basis for believing that someone in the home was in need of immediate assistance and that evidence from the warrantless intrusion should be suppressed. *Id.* at 585. There, a bar bouncer observed a male recklessly driving and called 911 to report an intoxicated driver in a black Ford F-150. *Id.* at 576. Thereafter, a 911 call was placed by a man reporting an accident, though he had not seen the accident happen. *Id.* Another 911 call was made by a woman who reported that she had observed a black Ford F-150 run a red light and almost strike another vehicle. *Id.* While on the phone with 911, she followed the F-150 and observed it swerving and then reach a home where she saw a man exit the truck stumbling, enter a code for the garage, and enter the residence through the garage. *Id.* When the officers arrived at the residence, they observed the truck and the damage to it that callers had described. *Id.* at 576-77. The officers knocked on the front and back doors announcing themselves with no response. *Id.* at 577. Concerned the man might have had a medical emergency because of the damage to the truck and that the man was likely very intoxicated, the officers entered the residence

and found Edgin asleep in a bedroom. *Id.* The officers then called EMS for Edgin for overconsumption of alcohol. *Id.* The woman who had called 911 later identified Edgin as the man she saw enter the house. *Id.* The officers then arrested, issued *Miranda*[2] warnings to, and interrogated Edgin. *Id.*

On appeal from the denial of Edgin's suppression motion, we concluded that the circumstances, including the fact that Edgin drove himself home and entered his home using the keypad on the garage, removed this case from the kind of emergency that would justify a warrantless intrusion. *Id.* at 585. Further, even if the officers had an objectively reasonable basis for believing that Edgin was in need of assistance, once they called EMS, their authority for a warrantless entry ceased and they were required to leave the premises. *Id.* at 585-86.

Unlike the circumstances in *Davido* and *McMaster*, here, the officers had no information to suggest that a crime had been, or was being, committed, or that anyone required medical or other assistance. Officers Pickel and McBride responded to a 911 call made for an unspecified reason, three hours after the call had been made. The 911 call did not provide any information about any injury, crime, or suspect; the call only provided the caller's name and an address that turned out to be nonexistent. Almost immediately after entering the residence, the officers realized that the home was a single-family residence, not an apartment building as indicated by the

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

911 caller. Nevertheless, they continued to enter and walk through the home, where they ultimately found the mushroom-growing operation.

In light of the above, we are constrained to conclude the officers did not have an objectively reasonable basis for believing that medical assistance was needed, or that persons were in danger, based on the circumstances known to them. Unlike the 911 calls in *Davido* and *McMaster*, the 911 call here contained no detail of any injury, crime, or incident that occurred and no details about a suspect involved or even whether anyone was present at the residence. Further, the police did not arrive to the call at issue until **three hours** after the 911 call was made, while the calls in in *Davido*, *McMaster* and *Edgin* were responded to immediately.

Like in *Edgin*, the officers here did not have an objectively reasonable basis for believing that medical assistance was needed, and, even if they had, once they discovered no one was in the residence they were required to vacate the premises. Instead, the officers conducted an investigation of the mushrooms which they acknowledged were not necessarily inherently illegal to have or grow based on their initial observation of them.

Accordingly, we conclude that the suppression court erred when it determined that the officers' warrantless search was permissible, where no exigent circumstance existed to lead the officers to believe that someone in the home was in need of immediate medical or police assistance. Accordingly, we reverse the trial court's order denying Fisher's suppression motion, vacate the judgement of sentence, and remand for further proceedings.

- 11 -

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/14/2025