J-A23034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| LONDON SELENA WALTON | : | No. 575 MDA 2024 |

Appeal from the Order Entered March 11, 2024
In the Court of Common Pleas of Adams County
Criminal Division at No: CP-01-CR-0000713-2023

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:          **FILED: MARCH 20, 2025**

Following a traffic stop, Appellee, London Selena Walton, was charged with several motor vehicle violations. The suppression court granted Appellee's motion to suppress all evidence arising from the traffic stop. The Commonwealth appeals from the order granting the motion to suppress, and we affirm.

Appellee was charged with driving under the influence, speeding, and failing to drive in the right-hand lane following a traffic stop on April 6, 2023. On January 16, 2024, Appellee filed a motion to suppress. On February 16, 2024, the court convened a suppression hearing in which Pennsylvania State Trooper Brandon Black was the only witness. On March 11, 2024, the court granted the motion to suppress. The court made the following findings of fact:

> 1. On April 6, 2023, at approximately 3:22 PM, [Trooper Black] initiated a traffic stop of [Appellee] after observing her vehicle travel at a speed of 70 mph in a 65 mph zone on US 15 Southbound in Straban Township, Adams County, Pennsylvania.

2. Trooper Black has approximately five-and-a-half years of law enforcement experience and conducts approximately 750-1000 traffic stops a year.

3. Trooper Black testified at the suppression hearing that he was conducting speed enforcement on US 15 Southbound when he observed a vehicle other than [Appellee's] speeding. He tried to catch up to that vehicle, but other vehicles in front of him were not moving to the right. Trooper Black did not testify that he ever turned on his lights or sirens to try to catch up to the speeding vehicle.

4. Trooper Black then turned his focus to [Appellee's] vehicle in front of him, a dark sedan, because that vehicle was not moving to the right lane. Trooper Black did not testify that he ever turned on his lights or sirens while he was behind [Appellee's] vehicle. Trooper Black testified that [Appellee's] vehicle stayed in the left lane for seven to eight miles, despite having several opportunities to move into the right lane. The MVR [mobile video recorder] footage, however, shows that there were cars traveling in the right lane and the cars in the left lane ahead of [Appellee] were passing those in the right lane.

5. Trooper Black testified that he paced [Appellee's] vehicle for 1.2 miles at a speed of 70 mph. Trooper Black's patrol vehicle has a properly calibrated speedometer that is accurate to plus or minus one mph. However, the MVR footage shows Trooper Black's patrol vehicle beginning a good distance behind [Appellee's] vehicle and progressively getting closer. Trooper Black admitted on cross-examination that his distance behind [Appellee's] vehicle varied as he followed the vehicle.

6. [Appellee] was travelling with the flow of traffic. Other than her alleged speed, [Appellee] displayed no indications of unsafe driving—[Appellee's] vehicle was not swerving, and she did not cross either the outside fog line or the centerline.

7. Trooper Black initiated a traffic stop.

8. [Appellee] was the driver of the vehicle.

Order, 3/11/24, at 1-3 (footnotes omitted).

Based on these findings, the court made the following conclusion of law:

[T]he MVR from Trooper Black's patrol vehicle shows [Appellee] in a line of traffic in the left lane that was moving faster than the line of traffic in the right lane. [Appellee]'s vehicle was passing the vehicles in the right lane. Because [Appellee] was passing other vehicles proceeding in the same direction and travelling at a greater speed than the traffic flow in the right lane, Trooper Black did not have probable cause to believe that [Appellee] was violating the Motor Vehicle Code for failing to drive in the right lane.

*Id.* at 6. The court further determined that the trooper lacked probable cause to believe that Appellee was speeding and lacked reasonable suspicion that she was driving under the influence. *Id.* at 7.

The Commonwealth timely appealed the suppression order to this Court, certifying that the order terminated or substantially handicapped the prosecution of this case. Both the Commonwealth and the suppression court complied with Pa.R.A.P. 1925. The court wrote in its Rule 1925 opinion that it suppressed the evidence of the stop because the MVR footage undermined key points in Trooper Black's testimony. Opinion, 4/24/24, at 2-4.

Trooper Black also testified that he paced Appellee's vehicle at a speed of 70 mph in a 65 mph zone. However, the MVR footage again contradicted Trooper Black. The MVR showed Trooper Black's patrol vehicle beginning quite a distance from Appellee's vehicle and getting progressively closer. The MVR footage did not show that Trooper Black maintained a steady distance behind Appellee. On cross-examination, Trooper Black admitted that he had at one time been closer to Appellee's vehicle and had then backed off, reinforcing that he had not maintained a steady distance behind Appellee.

Pa.R.A.P. 1925 Opinion, 4/24/24, at 2.

The Commonwealth raises a single issue in this appeal:

DID THE SUPPRESSION COURT ERR IN FINDING THAT TROOPER BLACK DID NOT HAVE PROBABLE CAUSE TO STOP [APPELLANT'S] VEHICLE WHEN TROOPER BLACK'S TESTIMONY SUPPORTED A FINDING OF PROBABLE CAUSE, AND WHEN THE SUPPRESSION COURT DID NOT STATE THAT TROOPER BLACK'S TESTIMONY WAS INCREDIBLE?

Commonwealth's Brief at 4.

In an appeal by the Commonwealth from an order granting a motion to suppress, our standard of review is as follows:

> When reviewing an order granting a defendant's motion to suppress evidence, we are bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record. Our review of the legal conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts. Moreover, our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing.

*Commonwealth v. Barnes*, 296 A.3d 52, 55 (Pa. Super. 2023). "[T]he suppression court, as fact-finder, has the exclusive role of passing on the credibility of witnesses." *Commonwealth v. McMaster*, 320 A.3d 85, 88 (Pa. Super. 2024).

The Commonwealth does not challenge the suppression court's determination that Trooper Black lacked probable cause to believe that Appellee was speeding. Commonwealth's Brief at 10 n.9. Nor does the Commonwealth contend that the trooper had reasonable suspicion to stop Appellee's vehicle to investigate whether she was driving under the influence. The Commonwealth insists, however, that the trooper had probable cause to

believe that Appellee violated 75 Pa.C.S. § 3313(d)(1) by driving in the left lane.  We disagree.

In general,

a traffic stop must be supported by sufficient facts to provide an officer with reasonable suspicion to believe that the vehicle or driver was in violation of a provision of the Vehicle Code.  See 75 Pa.C.S.[A.] § 6308(b).  However, a stop based on reasonable suspicion under § 6308(b) must serve an investigatory purpose relevant to the suspected violation.  Therefore, in circumstances where the violation is such that it requires no additional investigation, the officer must possess probable cause before initiating the traffic stop.

*Commonwealth v. Ruffin*, 282 A.3d 796, 800 (Pa. Super. 2022).

"The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." *Commonwealth v. Spence*, 290 A.3d 301, 312 (Pa. Super. 2023).  We evaluate probable cause by "considering all relevant facts under a totality of circumstances analysis."  *Id.*  Here, the Commonwealth concedes, and we agree, that Appellee's alleged offense, driving in the left-hand lane, required no further investigation, and therefore Trooper Black required probable cause to stop Appellee's vehicle.

75 Pa.C.S.A. § 3313, entitled "Restrictions On Use of Limited Access Highways," provides in relevant part:

(d) Driving in right lane.--

(1) ... [U]nless otherwise posted, upon all limited access highways having two or more lanes for traffic moving in the same direction,

- 5 -

all vehicles shall be driven in the right-hand lanes when available for traffic except when any of the following conditions exist:

(i) When overtaking and passing another vehicle proceeding in the same direction.

(ii) When traveling at a speed greater than the traffic flow.

(iii) When moving left to allow traffic to merge.

(iv) When preparing for a left turn at an intersection, exit or into a private road or driveway when such left turn is legally permitted.

75 Pa.C.S.A. § 3313(d).  A limited access highway is "[a] highway in respect to which owners or occupants of abutting lands and other persons have no legal right of access except at points and in the manner determined by the authority having jurisdiction over the highway."  75 Pa.C.S.A. § 102.

The record supports the suppression court's determination that Trooper Black lacked probable cause to stop Appellee's vehicle for violating Section 3313(d).  The MVR footage, which the court credited (and which we have reviewed), demonstrates that Appellee was driving in the left lane of a two-lane highway as the trooper's vehicle approached her from behind.  There were multiple vehicles in the left lane ahead of Appellee, and there were multiple vehicles in the right lane, one of which was beside Appellee.  Appellee and the other vehicles in the left lane were moving slightly faster than the vehicles in the right lane, and Appellee was gradually passing the vehicle beside her in the right lane.  Due to the vehicles ahead of Appellee in the left lane, Appellee could not pass the vehicle in the right lane at a fast pace, but Appellee was driving as swiftly as she could under the circumstances.  About

one minute after the MVR recording began, before the officer activated his lights and siren, Appellee finally passed the vehicle in the right lane and had her first opportunity to move into the right lane. As Appellee began to shift into the right lane, the trooper activated his lights and siren and directed her to the shoulder. Thus, as the suppression court determined, there was no probable cause to stop Appellee under these circumstances, since she was gradually overtaking and passing the vehicle in the right lane and was traveling at a speed greater than the traffic flow in the right lane, thus satisfying the exceptions in Section 3313(d)(i) and (ii).

The Commonwealth argues that the suppression court did not reject Trooper Black's testimony that Appellee's vehicle "was in the left-hand lane for miles on end . . . seven to eight miles" and passed up "several opportunities" to move to the right-hand lane. N.T., 2/16/24, at 6. Since the court did not reject this testimony, the Commonwealth continues, the evidence shows that the trooper had probable cause to stop Appellee's vehicle for violating Section 3313(d).

This argument fails because the court **did** reject the trooper's testimony. The court found that the trooper's testimony was "not credible" to the extent it was contradicted by the MVR footage:

> Although this Court did not specifically find that all the testimony by Trooper Black was not credible, this Court did specifically find several instances where the MVR footage contradicted Trooper Black's testimony. This Court used phrases such as "illogical" to describe a portion of Trooper Black's testimony and later specifically stated that "the MVR does not corroborate Trooper

- 7 -

Black's testimony," with regard to Trooper Black's testimony that he paced Appellee's vehicle. Although this Court did not use the exact phrase "not credible," **it is facially apparent that this Court found portions of Trooper Black's testimony not credible and determined that some of Trooper Black's statements should be given less weight than the MVR footage. In the Findings of Fact, this Court outlined Trooper Black's testimony but also specifically noted when the MVR footage contradicted that testimony. Therefore, it is facially apparent that when this Court noted the discrepancies between Trooper Black's testimony and the MVR footage, this Court found Trooper Black's testimony to be not credible in those instances**.

Pa.R.A.P. 1925 opinion at 3-4 (emphasis added). Moreover, the court determined that the MVR footage contradicted Trooper Black's testimony that Appellee remained in the left lane despite being able to move to the right lane:

Trooper Black testified that [Appellee's] vehicle stayed in the left lane for seven to eight miles, despite having several opportunities to move into the right lane. The MVR footage, **however,** shows that there were cars traveling in the right lane and the cars in the left lane ahead of [Appellee] were passing those in the right lane.

Order, 3/11/24, at 2 (finding of fact 4) (emphasis added). The term "however" indicates that the court chose to believe what it observed on the MVR footage instead of what the trooper testified. The same conclusion arises from the analysis in the court's Rule 1925 opinion, "Although Trooper Black testified that Appellee's vehicle, which was in the left lane, had several opportunities to move to the right lane, the MVR footage showed that there were other cars traveling in the right lane and that the cars in the left lane ahead of Appellee were passing those in the right lane." Pa.R.A.P. 1925 Opinion at 2.

In short, the foregoing passages demonstrate that the court chose to believe the MVR footage and declined to credit the trooper's testimony that Appellee drove in the left lane for seven to eight miles despite opportunities to move into the right lane. The court had the prerogative to disbelieve the trooper's testimony given its "exclusive role of passing on the credibility of witnesses." *McMaster*, 320 A.3d at 88.

The Commonwealth also argues that the suppression court's findings were inconsistent with the MVR footage, because "the MVR clearly showed that [Appellee] had opportunities to move her vehicle to the right but failed to do so" and did not show Appellee's vehicle passing other vehicles. Commonwealth's Brief at 16; *see also id.* at 17 (Commonwealth's claim that court's characterization of the MVR was "manifestly erroneous"). The dissent herein raises the same claim. Dissent at 4-5 (arguing that the MVR footage showed that Appellee had time to move her car to right lane). Having reviewed the MVR footage, we conclude that it fully supports the suppression court's factual findings. We cannot disturb the court's findings concerning the MVR footage because we "are bound by [the suppression] court's factual findings to the extent that they are supported by the record." *Barnes*, 296 A.3d at 55. A video recording made part of the certified record may, in rare cases, contradict a trial court's factual findings that are based on credibility determinations. *See Commonwealth v. Griffin*, 116 A.3d 1139, 1143 (Pa. Super. 2015). We subsequently clarified that *Griffin* applies solely where the

video in question blatantly contradicts the trial court's credibility determinations. *See Commonwealth v. Guess*, 2024 WL 2021793, *4 n.6 (Pa. Super., May 7, 2024) (unpublished memorandum)[1] (Stabile, J., joined by Bowes, J. and Lane, J.). In this case, we see nothing in the video that blatantly contradicts the suppression court's findings of fact. As stated above, we conclude that the MVR footage supports the suppression court's findings. We may not, as the dissent does, reinterpret this evidence in a manner that fails to give sufficient deference to the trial court's findings.

Finally, relying on *Commonwealth v. Johnson*, 202 A.3d 125 (Pa. Super. 2019) (*en banc*), the Commonwealth asserts that we may reject the suppression court's legal conclusions concerning the alleged Section 3313(d) violation. In *Johnson*, the trial court granted a motion to suppress evidence on the ground that a state trooper lacked probable cause to make a traffic stop. This Court reversed on the grounds that (1) the trooper had probable cause to stop the defendant's vehicle for speeding because the uncontradicted evidence demonstrated that he was driving 70 miles per hour in a 55 mile per hour zone for four miles, and (2) the suppression court did **not** find that the trooper's testimony as to speeding was not credible. *Id.* at 130. Here, in contrast, the suppression court found that the MVR footage contradicted the

---

[1] We may cite unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019 for their persuasive value. **See** Pa.R.A.P. 126(b).

trooper's testimony and declined to credit the trooper's testimony that Appellee drove in the left lane for miles despite having opportunities to change lanes. Thus, *Johnson* does not change our view that the suppression order in this case was proper.[2]

For these reasons, we affirm the order granting suppression of the evidence.

Order affirmed. Jurisdiction relinquished.

Judge Olson joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>03/20/2025</u>

---

[2] We note that much of the MVR footage shows troopers administering field sobriety tests to Appellee following Trooper Black's traffic stop. We are at a loss to understand why these tests were administered, since the MVR footage displayed **no** signs of impairment. Needless to say, since the trooper lacked legal authority to initiate the traffic stop, all evidence obtained from the field sobriety tests would have been subject to suppression as well.