J-S29006-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VINCE EDWARD HINES | : | No. 52 WDA 2025 |

Appeal from the Order Entered December 10, 2024
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000275-2024

BEFORE:  NICHOLS, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY NICHOLS, J.:　　　　　　**FILED:  February 5, 2026**

The Commonwealth appeals from the trial court's order granting Appellee Vince Edward Hines's motion to suppress.[1,2]  The Commonwealth argues that the suppression court erred in granting Appellee's motion to

---

[1] In its notice of appeal, the Commonwealth certified that the trial court's suppression order would terminate or substantially handicap the prosecution of its case.  **See** Pa.R.A.P. 311(d) (stating that "in a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution"); **see also** Notice of Appeal, 1/9/25, at 1 (unpaginated); Commonwealth's Brief at 1.

[2] The Commonwealth claims to appeal from both the December 10, 2024 order granting Appellee's motion to suppress and from the January 2, 2025 order denying the Commonwealth's motion for reconsideration.  **See** Notice of Appeal, 1/9/25.  However, an appeal does not lie from an order denying reconsideration but rather the underlying order.  **See Commonwealth v. Moir**, 766 A.2d 1253, 1254 (Pa. Super. 2000).  We have, therefore, updated the caption accordingly.

suppress. After review, we reverse the suppression court's order granting suppression and remand for further proceedings consistent with this memorandum.

The suppression court made the following findings of fact:

On February 5, 2024, Sharon Police Officers were dispatched to the 700 block of New Castle Avenue in the City of Sharon for a [report of a] male trespasser [(the Injured Man)[3]] who was not moving [near] a substantial amount of blood on the ground. Officers issued commands to [the Injured Man] and got no response. Officers proceeded to administer lifesaving measures [to the Injured Man]. [Appellee] was talking, saying "come on man" as the officers administered the lifesaving measures. [The Injured Man] had a substantial gash on his head and the officer could not determine the type of wound. EMS arrived and transported [the Injured Man] to an ambulance. Officers spoke with two women who said they heard a gunshot. [Appellee] was in the backyard during this time and appeared upset to the officers. Officers testified that the scene was traumatic.

[Appellee] informed [officers] that [he had] heard a noise outside, walked outside, saw [the Injured Man] laying on the ground, and a shorter African American male riding away on a bicycle. [Appellee] was only able to identify [the Injured Man] as "the white guy that does drywall."

Officers observed blood on a tarp a couple of inches from where [the Injured Man] was [lying]. Officers observed no gun shells or evidence of a gunshot outside the home. Officers observed no blood trail leading out of the house or through the yard. [Officer

_____

[3] For clarity, we refer to this individual as "the Injured Man," rather than "the Victim," because the record does not reflect that Appellee was charged with any crime in connection with the Injured Man's injuries. **See** Criminal Information, 4/19/24, at 1-3 (unpaginated); **see also** N.T., 9/3/24, at 31 (reflecting that the responding officer did not believe Appellee was involved in the incident that caused the Injured Man's injuries). Further, testimony at the suppression hearing established that the Injured Man did not suffer a gunshot wound. **See** N.T., 9/3/24, at 31 (establishing that doctors at the hospital did not believe the Injured Man suffered from a gunshot wound).

Polichena] testified that he did not know who the [initial] 911 caller was. Officers received no indication that anyone was inside the home and heard no noise coming from inside the house. [Appellee] called his minor son [to come] outside [of the house]. [After approximately ten minutes and without an arrest or search warrant,] the officers proceeded to do a protective sweep of the garage, near the location of [the Injured Man], and the residence located at 752 New Castle Avenue in Sharon, Pennsylvania.

During the protective sweep of the residence, officers saw a shotgun leaning against the wall in the dining room. The officers testified they knew it was [Appellee's] home as they often saw him, and other transients, outside the home. Officers transported [Appellee] and his minor son to the police station. Officers later executed a search warrant on [Appellee's] home and retrieved several items resulting in the present charges. [Appellee] stated during a later interview that [the Injured Man] had been performing some caulking work for [Appellee]. Officers confirmed during [Appellee's] interview at the police station that [Appellee had] called the police.

Suppression Ct. Op. & Order, 12/10/24, at 1-3 (unpaginated) (some formatting altered).[4]

Appellee was arrested and charged by information filed on April 19, 2024, with persons not to possess a firearm, use or possession of an electric or electronic incapacitation device, possession of marijuana, and possession of drug paraphernalia.[5] On August 19, 2024, Appellee filed an omnibus pretrial motion to suppress the evidence seized from his home. The suppression court held a hearing on Appellee's motion on September 3, 2024.

---

[4] The suppression court's Rule 1925(a) opinion incorporated its December 10, 2024 order and opinion as well as its January 21, 2025 amended memorandum opinion. **See** Suppression Ct. Op., 2/4/25, at 2 (unpaginated).

[5] 18 Pa.C.S. §§ 6105(a)(1), 908.1(a)(2); 35 P.S. § 780-113(a)(31), and (32), respectively.

Both the Commonwealth and Appellee filed post-hearing briefs with the suppression court. On December 10, 2024, the suppression court granted Appellee's motion to suppress. The Commonwealth filed a motion for reconsideration on December 20, 2024, which the suppression court denied on January 2, 2025. The Commonwealth filed a timely notice of appeal. Both the suppression court and the Commonwealth complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review:

Whether the search of Appellee's home was justified by a reasonable belief that victims, witnesses, or perpetrators were inside the home, and therefore in compliance with the Fourth Amendment to the United States Constitution and Article 1 Section 8 of the Pennsylvania Constitution?

Commonwealth's Brief at 4.

The Commonwealth argues that the search of Appellee's home was a valid protective sweep necessary for the protection of officers and others. *Id.* at 12. The Commonwealth contends that protective sweeps are valid outside of the search incident to arrest context where they are supported by "probable cause and exigent circumstances." *Id.* at 13 (citing **Commonwealth v. Edgin**, 273 A.3d 573, 580 (Pa. Super. 2022)). The Commonwealth asserts that "[i]t is well settled that exigent circumstances exist where the police reasonably believe that someone within a residence is in need of immediate aid." *Id*. at 14 (citing **Commonwealth v. Coughlin**, 199 A.3d 401, 405 (Pa. Super. 2018)). Specifically, the Commonwealth argues that "[w]hen there is a reasonable and appropriate belief that victims, witnesses, or perpetrators

- 4 -

are inside, warrantless entry is justified." *Id.* (citing *Commonwealth v. Witman*, 750 A.2d 327, 331 (Pa. Super. 2000)). The Commonwealth argues that police had probable cause to enter Appellee's home.[6] *Id.* at 19. Additionally, comparing the instant case to *Coughlin* and *Witman*, the Commonwealth argues that police had a reasonable belief that a perpetrator, victim, or witness was inside Appellee's home, which justified the search. *See id.* at 19-24. Namely, the Commonwealth asserts that the reasonable belief was based upon the lack of information provided by Appellee, which only "allow[ed] the responding officers to know a very serious crime had been committed and that the perpetrator was still at large." *Id.* at 19-20. Additionally, the Commonwealth contends that the officer's initial observations of the Injured Man's wounds, location of the Injured Man, and prompt arrival to the scene "made it more reasonable to believe that the perpetrator or a

_____

[6] While the Commonwealth now argues that the search was supported by probable cause, we note that in its response and brief in opposition to Appellee's motion filed in the suppression court, the Commonwealth relied on Appellee's alleged consent to search the home and not probable cause. *See* Commonwealth's Response, 12/2/24, at 14 (arguing "[Appellee] by calling 911 implicitly consented to not only the search of his property, but the residence"). To the extent that the Commonwealth now wishes to raise that the search was supported by probable cause, that argument is waived. *See* Pa.R.A.P. 302(a) (stating "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal."); *see also Commonwealth v. Linaberry*, 2188 EDA 2019, 2020 WL 5135337, at *5 (Pa. Super. filed Aug. 31, 2020) (unpublished mem.) (explaining that, when the Commonwealth raises a new theory on appeal in an attempt to overturn a grant of suppression, that new theory is waived). *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

potential victim [was] inside" Appellee's home. *Id.* at 20. The Commonwealth further asserts that "the location of [the Injured Man's] body, and the lack of shell casings nearby, would make it more likely that the perpetrator was inside the home during the commission of the crime, or just prior thereto, and therefore other potential victims could have been in the home." *Id.* at 21. The Commonwealth concludes that the evidence of a violent crime in Appellee's backyard, the neighbors' reports of hearing gunshots, and Appellee's vague account of what occurred "gave the police a reasonable belief that victims, witnesses, or perpetrators were in the home." *See id.* at 23-24.

Appellee counterargues that the protective sweep doctrine does not apply because the sweep was not conducted pursuant to an arrest. *See* Appellee's Brief at 6-9. Appellee contends that no exigent circumstances existed because "[t]he record is devoid of any articulable facts suggesting that there was an individual inside of the Appellee's residence who posed an imminent danger or that immediate action was required to protect life or prevent serious injury." *Id.* at 13. Appellee argues that the Commonwealth failed to present evidence justifying a warrantless search because there was no indication that violence had occurred inside his home, that anyone was injured or in distress, or that he was being evasive or providing conflicting information to police. *Id.* at 17.

The suppression court argues that Appellee did not consent to the search of his home because "[u]nlike *Witman*, it was not as readily identifiable that [Appellee] was the likely caller for assistance [and], although [Appellee] did

call 911, [the Injured Man] was outside of [Appellee's] residence and [Appellee] did not call emergency personnel **inside** his home." Suppression Ct. Op. & Order, 12/10/24, at 7 (unpaginated) (emphasis in original). The suppression court asserts that "[t]here was no evidence that the crime began or partially occurred inside [Appellee's] home." *Id.* at 8 (unpaginated). Further, the suppression court states that there were no noises coming from inside Appellee's home, no evidence outside of the Injured Man's immediate area, and "no evidence as to why the officers felt another victim would be inside the home or that the officers felt [Appellee] was lying or misleading [them]." *Id.* Accordingly, the suppression court concludes that "[t]here is not sufficient evidence presented to justify a protective sweep[,]" and that "the Commonwealth has failed to point to specific, objective, articulable facts that would suggest that an experienced officer would believe a citizen [was] in need of assistance[,]" and, therefore, the Community Caretaking Doctrine does not apply. *Id.* at 9-10 (unpaginated).

Our standard of review for a challenge to a suppression court's granting of a motion to suppress is well settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Korn*, 139 A.3d 249, 252-53 (Pa. Super. 2016) (citation omitted).

Further, while "[o]ur standard of review is restricted to establishing whether the record supports the suppression court's factual findings[,] . . . we maintain *de novo* review over the suppression court's legal conclusions." **Id.** at 253 (citation omitted). Additionally, "our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing." **Commonwealth v. Rapak**, 138 A.3d 666, 670 (Pa. Super. 2016) (citation omitted).

As this Court has previously stated:

Under both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, a search conducted without a warrant is deemed to be unreasonable, and therefore, constitutionally impermissible, unless an established exception applies. One such exception is consent, voluntarily given. Consent may be express or implied.

\* \* \*

The legality and constitutionality of warrantless, but consented-to searches and seizures are examined objectively under a totality of the circumstances test to determine whether the consent was the product of an essentially free and unconstrained choice and not the result of coercion or duress. Under this maxim, no one fact, circumstance, or element of the examination of a person's consent has talismanic significance.

It is a court's function to determine whether a criminal defendant voluntarily and knowingly gave his consent to be subjected to a search or seizure as contemplated by the Fourth Amendment and Article I, Section 8.

With regard to consent, "voluntariness" is a question of fact to be determined from the totality of the circumstances. Moreover, the standard for measuring the scope of an individual's consent is one

of "objective reasonableness." Thus, we ascertain the scope of consent based on what "a reasonable person would have understood by the exchange between the officer and the person who gave the consent."

***Commonwealth v. Fredrick***, 230 A.3d 1263, 1267 (Pa. Super. 2020) (citing, *inter alia*, ***Witman***, 750 A.2d at 327) (some formatting altered).

In ***Witman***, a panel of this Court concluded "that a sound exception to the warrant requirement must exist where a defendant has summoned police and set the tone for the initial investigation." ***Witman***, 750 A.2d at 335. Specifically, the Court found that by "summoning emergency personnel for help and by communicating to police the idea that a murderer was at large, [the defendant] implicitly consented to the police entry into the house." ***Id.***

Once the Court determined that Witman had consented to the presence of police in his home, it analyzed the propriety of the sweep of the entire house. ***Id.*** This Court first noted that it was clear that a crime had occurred based upon the victim's injuries, that Witman had informed police that a murderer was at large, and that police, based on this information and the fact that they did not know if anyone remained in the house, "properly recognized the possibility that there may have been victims, perpetrators or witnesses" still inside the home. ***Id.*** The Court then stated that "[u]nder emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement[]" and concluded that "where there was a reasonable and appropriate belief victims, perpetrators or witnesses remained inside, the exigency was sufficient to justify warrantless entry into the house." ***Id.*** at

335-36 (citation omitted). Specifically, this Court addressed the fact that "[b]ased upon the information supplied by [Witman], police had every reason to believe a third party had been and, . . . perhaps, was still inside the house." *Id.* at 336. Therefore, this Court found that the protective sweep was lawful, and any evidence police observed in plain view was admissible. *Id.*

Initially, we note that the suppression court's findings of fact are supported by the record. *See Korn*, 139 A.3d at 252-53. Further, we agree with the suppression court that the search of Appellee's home was not justified by the community caretaking doctrine. *See Caniglia v. Strom*, 593 U.S. 194, 196 (2021) (holding that the community caretaking doctrine does not supply a valid exception to the warrant requirement to justify the warrantless search of a home). However, we disagree with the suppression court's legal conclusion that the protective sweep was not valid pursuant to *Witman*. *See Korn*, 139 A.3d at 252-53.

Specifically, we believe that by calling 911 to report a trespasser, Appellee consented to the protective sweep of his home. *See Witman*, 750 A.2d at 335-36; *Fredrick*, 230 A.3d at 1267-68. While it is true that police did not know who the 911 caller was upon dispatch, police were responding to a report of a "trespasser" and, when they arrived on scene, encountered Appellee, whom officers knew was a resident of the house. *See* N.T., 9/3/24, at 6-7, 17-18, 20. Based on the fact that police were responding to a report of a trespasser and encountered a known resident once they arrived at the scene, police could reasonably believe that a resident was the 911 caller. In

- 10 -

fact, there would be no other way for someone to determine the Injured Man was a "trespasser" unless they were familiar with the property, its owners and tenants, and their invited guests.

Further, when police arrived on Appellee's property, they found an unresponsive man seriously injured near the open garage door in Appellee's backyard in close proximity to his residence. *See* N.T., 9/3/24, at 6-7, 10, 20, 25. Appellee was unable to offer any explanation as to what had occurred on his property as his account to police was vague. *See id.* at 22. Appellee merely told police that he heard a loud noise, came outside to find the Injured Man on the ground several minutes later, and saw another man peddle away on a bike. *Id.* at 9, 22-23. While he suggested that the event occurred completely outside of his home, his account was so vague that police concluded that he had not seen what transpired. *See id.* at 22-23. Additionally, the neighbors' reports of hearing gunfire suggested that there was an unaccounted shooting suspect in the area and, potentially, inside Appellee's home. *See id.* at 24. Before police conducted the protective sweep, Appellee assisted police in ensuring that his minor son exited the house prior to the sweep. *See id.* at 10, 26-27.

Accordingly, based upon the totality of the circumstances, we believe Appellee consented to the protective sweep of his home. *See Witman*, 750 A.2d at 335. Police were summoned to Appellee's property by Appellee for an emergency. When they arrived, they found an unresponsive, severely injured man. Neighbors reported hearing gunshots but did not see what happened,

and Appellee, a resident of the property, had no explanation of what had occurred and was unable to assist police in determining whether there was a weapon or violent perpetrator still at large on his property. Accordingly, based on these facts it appears that Appellee may have summoned emergency personnel for help and communicated the idea that a trespasser and dangerous suspect was still at large. *See Witman*, 750 A.2d at 335. Therefore, the information that the police collected from Appellee and his neighbors provided the police with a reasonable belief that victims, perpetrators, or witnesses could be inside Appellee's home. *See id.*

As to the scope of his consent, we note that Appellee assisted police in preparing to conduct the protective sweep of his home by calling his minor son out of the house.[7] We believe that it is objectively reasonable to conclude that a person has provided consent to conduct a protective sweep of their home where the person calls police to report an emergency on their property, provides information that does not foreclose the possibility that a dangerous suspect may be hiding in the home, and then assists police in readying the home for the protective sweep. *See Fredrick*, 230 A.3d at 1267. Accordingly, we find that the sweep of Appellee's home was justified pursuant to *Witman* because Appellee impliedly and voluntarily consented to the protective sweep of his home and reverse the order granting suppression. *See Witman*, 750 A.2d at 335-36; *Fredrick*, 230 A.3d at 1267-68.

---

[7] The record is devoid of any evidence suggesting that Appellee otherwise objected to the protective sweep.

Order granting suppression reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

PJE Bender joins the memorandum.

Judge Sullivan concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/5/2026